THE HON. CHARLES H. COOPER,
THE HON. GEORGE W. FARR,
THE HON. WILLIAM L. HOLLOWAY,
THE HON. ALBERT J. GALEN,

Associate Justices.

CLAWSON, ADMR., APPELLANT, *v.* SCHROEDER, RESPOND-ENT.

CLAWSON, RESPONDENT, *v.* SCHROEDER, APPELLANT.

(Consolidated Cases.)

(No. 4,749.)

(Submitted April 21, 1922. Decided June 10, 1922.)

[208 Pac. 924.]

*Personal Injuries—Automobiles—Negligence of Minor—Rule of Liability of Father.*

Personal Injuries—Automobile Driven by Minor—Liability of Father—Agency.

1. The basic principle of liability of a father for injuries sustained by the reckless driving of his automobile by his minor son is that of agency at the time of the accident, to-wit: that the driver was then in execution of an order of his father or doing his work.

(488)

Master and Servant—Doctrine of *Respondeat Superior*—Applicability.
   2. The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged as a result of the wrong.

Personal Injuries—Automobile Driven by Minor—Liability of Father—Rule.
   3. *Held*, that the mere ownership of an automobile purchased by a father for the use of himself and family does not render him liable in damages to a third person for injuries sustained by its operation by his minor son, on a public street or highway, in furtherance of the son's own business or pleasure, the fact that the son had the father's special or general permission to use the car being immaterial.

*Appeals from District Court, Yellowstone County; A. C. Spencer, Judge.*

SEPARATE ACTIONS by John R. Clawson, individually and as administrator of the estate of Harold Clawson, deceased, against John H. Schroeder. From a judgment in the first case in favor of plaintiff for less than plaintiff asked, and an order denying his motion for a new trial, plaintiff appeals; and from a judgment for plaintiff and an order denying defendant's motion for a new trial in the second case, defendant appeals. Judgment and order in first case affirmed, and judgment and order in second case reversed, and cause remanded, with directions to enter judgment for defendant.

*Mr. George W. Pierson*, for Appellant in cause No. 7217 and for Respondent in cause No. 7218, submitted a brief and argued the causes orally, *Mr. George S. Smith*, of Counsel.

The ownership of the car having been admitted its use was for the owner unless otherwise shown. "He who can and does not forbid that which is done on his behalf is deemed to have bidden it." (Rev. Codes, sec. 6187.) The pleadings and evidence tended to show agency and the court was unauthorized

---

3. Liability where automobile is being used by a member of owner's family, see notes in Ann. Cas. 1914C, 1091; Ann. Cas. 1917D, 1002; 41 L. R. A. (n. s.) 775; 50 L. R. A. (n. s.) 59; L. R. A. 1916F, 223; L. R. A. 1917F, 365; L. R. A. 1918F, 297.

Liability of owner under "family purpose" doctrine for injuries by an automobile while being used by a member of his family, see note in 5 A. L. R. 226; 10 A. L. R. 1449; 14 A. L. R. 1087.

to withdraw the case from the jury. (*Nord* v. *Boston & Mont. etc. Min. Co.,* 30 Mont. 48, 75 Pac. 681; *Anderson* v. *Northern Pac. R. R. Co.,* 34 Mont. 181, 85 Pac. 884; *Roach* v. *Rutter,* 40 Mont. 167, 105 Pac. 555.) The admission of ownership of the car raised the presumption that the driver was the agent of the defendant. (*Baker* v. *Maseeh,* 20 Ariz. 201, 179 Pac. 53; *Clark* v. *Jones,* 91 Or. 455, 179 Pac. 272; *Birch* v. *Abercrombie,* 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020; *Ferris* v. *Sterling,* 214 N. Y. 249, Ann. Cas. 1916D, 1161, 108 N. E. 406; *Edgeworth* v. *Wood,* 58 N. J. L. 463, 33 Atl. 940; *Holz-heimer* v. *Lit Bros.,* 262 Pa. St. 150, 105 Atl. 73; *Clark* v. *Sweaney,* 175 N. C. 280, 95 S. E. 568; *Moore* v. *Roddie,* 103 Wash. 386, 174 Pac. 648; *Gershel* v. *White Express Co.,* 113 N. Y. Supp. 919; *Landry* v. *Oversen,* 187 Iowa, 284, 174 N. W. 255; *Hatter* v. *Dodge Bros.,* 202 Mich. 97, 167 N. W. 935.)

The owner of the car is liable although his son was using the car alone for his purpose. (*Johnson* v. *Smith,* 143 Minn. 350, 173 N. W. 675; *Plasch* v. *Fass,* 144 Minn. 44, 10 A. L. R. 1446, 174 N. W. 438; *King* v. *Smythe,* 140 Tenn. 217, 204 S. W. 296; *Benton* v. *Regeser,* 20 Ariz. 273, 179 Pac. 966; *Johnson* v. *Evans,* 141 Minn. 356, 2 A. L. R. 891, 170 N. W. 220; *Wolf* v. *Sulik,* 93 Conn. 431, 4 A. L. R. 356, 106 Atl. 443.)

*Mr. J. H. Johnston* and *Messrs. Goddard & Clark,* for Respondent in cause No. 7217 and for Appellant in cause No. 7218, submitted a brief; *Mr. Johnston* and *Mr. O. F. Goddard* argued the causes orally.

If the plaintiff is entitled to recover at all, he can only recover on the theory that the defendant and his minor son stood in the relation of master and servant. The evidence shows that such relation did not exist, in that the evidence shows conclusively that the boy did not drive the car with either the knowledge, consent, approval or direction of the defendant or in the place or stead of the defendant. The facts proven negative the allegations of the complaint and take the case out of the line of cases which place the liability on the father

where the son is driving the car as his agent or servant, and, therefore, the defendant is not liable.

In the case of *Linville* v. *Nissen,* 162 N. C. 95, 77 S. E. 1096, the following propositions are announced: The owner of an automobile is not liable for injuries caused by it merely from the fact of his ownership; it not being *per se* a dangerous instrumentality. A parent is not liable for the torts of his minor son in absence of showing of approval thereof by him or of agency. A child does not become its parent's servant merely by the fact of the relation of parent and child, so as to make the parent liable as master for the child's torts. A father would not be liable for his son's negligence in driving his automobile, even if the son was the father's servant in doing so, unless he was at the time acting within the scope of his employment in regard to his father's business. A master is not responsible for the torts of his servant committed wholly for the servant's own purposes and in the consummation of his personal desires. (See, also, *Johnson* v. *Glidden,* 11 S. D. 237, 74 Am. St. Rep. 795, 76 N. W. 933; *Brittingham* v. *Stadiem,* 151 N. C. 299, 66 S. E. 128; *Reynolds* v. *Buck,* 127 Iowa, 601, 103 N. W. 946; *Maher* v. *Benedict,* 123 App. Div. 579, 108 N. Y. Supp. 228; *Patterson* v. *Kates,* 152 Fed. 481; *Lewis* v. *Amorous,* 3 Ga. App. 50, 59 S. E. 338; *Watkins* v. *Clark,* 103 Kan. 629, 176 Pac. 131.) The same principles are sustained in the case of *McFarlane* v. *Winters,* 47 Utah, 598, L. R. A. 1916D, 618, 155 Pac. 437; *Halverson* v. *Blosser et al.,* 101 Kan. 683, L. R. A. 1918B, 498, 168 Pac. 863; *Lotz* v. *Hanlon,* 217 Pa. St. 339, 118 Am. St. Rep. 922, 10 Ann. Cas. 731, 10 L. R. A. (n. s.) 202, 66 Atl. 525; *Symington* v. *Sipes,* 121 Md. 313, 47 L. R. A. (n. s.) 662, 88 Atl. 134.

If injury happens after servant has turned aside from his master's business and gone upon an errand of his own, the master is not liable. (*O'Brien* v. *Stern Bros.,* 223 N. Y. 290, 119 N. E. 550, 551; *Reilly* v. *Connable,* 214 N. Y. 586, L. R. A. 1916A, 954, 108 N. E. 853.)

MR. JUSTICE GALEN delivered the opinion of the court.

These two causes were consolidated and tried together in the district court of Yellowstone county and are presented to this court upon a single record. On appeal they were argued and briefed together, and will be jointly considered and determined.

In the first cause John R. Clawson, as the administrator of the estate of Harold Clawson, deceased, seeks the recovery of $50,000 damages from the defendant from the alleged negligent killing of Harold Clawson, plaintiff's son; and in the second cause the plaintiff seeks recovery in his own right of $20,000 damages for loss of decedent's earnings between the date of his death and the time that he would have reached his majority.

It appears that the deceased was ten years of age, and that while crossing Second Avenue North in the city of Billings on December 10, 1918, he was struck by an automobile belonging to the defendant, then being driven by defendant's son, Herman, eighteen years of age, as a result of which the decedent was severely injured and died. It is alleged that the automobile was owned and maintained by the defendant ''for the use, convenience, pleasure, and comfort of himself and family''; that Herman Schroeder, the minor son of the defendant, and a member of his family, ''was authorized and had authority from the defendant to operate and run said automobile, and was so employed by the defendant for that purpose''; that at the time of the accident it was being driven at an excessive rate of speed, in violation of the ordinances of the city. Upon issue joined, both cases were tried together to a jury. In the first judgment was rendered and made in favor of the plaintiff as administrator for $1,000 and costs upon a verdict in plaintiff's favor of $1,000; and in the second judgment was rendred and made in plaintiff's favor for $5,000 and costs, upon a verdict for the plaintiff in the sum of $5,000. In the first cause plaintiff has appealed from the judgment and order

denying his motion for a new trial; and in the second the defendant appeals from the judgment and order denying him a new trial.

Although many errors are assigned, there is, in our opinion, but one question necessary to be considered, decisive of both appeals, *viz.*, the liability of the owner for the tort of his son, while driving an automobile on an independent mission; it having been purchased and used for family purposes.

The evidence discloses that the defendant owned and operated the automobile in question in connection with his business and for the pleasure of himself and his family; that the defendant, being away from home much of the time, instructed his two sons not to use the car in his absence without obtaining their mother's permission. On the night of the accident Mrs. Schroeder directed her son Herman to take two lady guests to their respective homes from the Schroeder residence; and Herman, in obedience, first drove one of them to her residence, immediately returning for the other lady, whom he then took to her home. Thereupon he started down town to the Y. M. C. A. building, for purposes of his own, doing so in disobedience of his mother; and, while hurrying so as to avoid being late for supper, the unfortunate accident occurred.

Herman Schroeder testified: "My mother told me to take the ladies home, but not to go down town. * * * I drove this car down town that night on my own errand. I was not driving it for my mother. I was going to the Y. M. C. A."

In the case of *Lewis* v. *Steele*, 52 Mont. 300, 157 Pac. 575, the father was held liable, following earlier decisions enunciated by the courts, particularly the doctrine laid down by the supreme court of Washington in the case of *Birch* v. *Abercrombie*, 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020. In the *Lewis Case* the material distinguishing feature from the case before us is: There the father gave his express permission and consent to his son to drive the car on the occasion of the accident. Although the father was held liable, Mr. Justice Sanner, speaking for this court, well said: "Whether the

circumstances make a case for the application of *respondeat superior* depends upon considerations entirely beside the fact that the device employed was an automobile. That instrument is now too well established to be singled out for judicial preference or animadversion. It has taken its place among the common methods of transportation, and no good reason occurs to us, in the absence of legislation, for denying to its use the same general rules of responsibility, direct and consequential, as are applicable 'to other common methods of transportation, having in mind, of course, its potentialities for harm as well as good.''

In the recent case of *Hoffman* v. *Roehl*, 61 Mont. 290, 203 Pac. 349, the employer was held liable merely in application of the well-known rules of agency. In that case we correctly stated the rule as follows: ''The decisive question in every instance is whether the agent or employee was, at the time of negligent injury, acting within the scope of his employment. If he acted independently of his employer, or was on missions or purposes of his own, then the employer is not held accountable in damages.'' This we conceive to be the basic principle, even though the driver of the automobile is the son or other member of the family of the owner of the automobile.

''The essence of the doctrine of *respondeat superior* is that of agency. The relation of parent and child, or husband and wife, or other family connection, unaccompanied by the contractual relation of employer and employee, is not sufficient to create responsibility on the part of the one for the act or omission of the other.'' (See section 901, Babbitt on the Law Applied to Motor Vehicles, 2d ed., by Blackmore; also Shearman & Redfield on Negligence, 5th ed., sec. 114; Thompson's Commentaries on Negligence, 2d ed., secs. 537, 538.)

Liability cannot be cast upon the defendant merely because [1] he owns the car or because he permitted his son to drive the car whenever he wished to do so, or because the driver was his son. Liability arises from the relation of agency, and it must be determined by the inquiry whether the driving at

the time was within the authority of the principal, in the execution of his orders or in the doing of his work. Agency is not presumed merely by the fact that the driver of the automobile happens to be a member of the family of the owner thereof. (*Maher* v. *Benedict,* 123 App. Div. 579, 108 N. Y. Supp. 228.)

In the absence of proof of agency, the plaintiff is not entitled to a recovery, even though it may appear that the son was driving the automobile at the time of the accident with the express or implied consent of his father. The defendant's son did not drive the automobile at the time of the accident with either the knowledge, consent, approval, or direction of the defendant or in his place or stead, so that the defendant cannot be held responsible upon any theory. It is a rule well-established that the father cannot be held responsible for the tort of his son, committed without his knowledge or authority, express or implied. The only ground upon which the father can be held answerable for the act of his son in the case under consideration excludes the idea of an independent venture on the part of the son. (*Stowe* v. *Morris,* 147 Ky. 388, 39 L. R. A. (n. s.) 224, 144 S. W. 52.) The basic principle of liability is agency, and the father cannot be here held responsible for the negligence of his minor son in the absence of proof of the existence of agency at the time of the accident. (See Babbitt on the Law Applied to Motor Vehicles, by Blackmore, sec. 901.)

In discussing the liability of the father under the family purpose doctrine, the supreme court of New York in the case of *Van Blaricom* v. *Dodgson,* 220 N. Y. 111, L. R. A. 1917F, 363, 115 N. E. 443, said: "But it seems to us that such a theory is more illusory than substantial, and that it would be far-fetched to hold that a father should become liable as principal every time he permitted a capable child to use for his personal convenience some article primarily kept for family use. That certainly would introduce into the family relation-

ship a new rule of conduct which so far as we are aware, has never been applied to other articles than an automobile."

In *Watkins* v. *Clark,* 103 Kan. 629, 176 Pac. 131, the supreme court of Kansas well said: "The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result an adaptation of the law of master and servant and principal and agent was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition, putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.' As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, *prima facie* it was father's little outing by proxy, and, if an accident happened, *prima facie* father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact, ownership of the car, by declaring that the question of 'agency' was one for the jury, a process known in some quarters as 'passing the buck.' The sooner the courts

settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts.''

The doctrine in the state of Missouri, first enunciated by the court of appeals, held the father responsible under the family purpose doctrine. (*Daily* v. *Maxwell*, 152 Mo. App. 415, 133 S. W. 351; *Marshall* v. *Taylor*, 168 Mo. App. 246, 153 S. W. 527; *Hays* v. *Hogan*, 180 Mo. App. 237, 165 S. W. 1125.) This view, however, was completely reversed by the supreme court in the case of *Hays* v. *Hogan*, 273 Mo. 1, Ann. Cas. 1918E, 1127, L. R. A. 1918C, 715, 200 S. W. 286, wherein the court said: ''It is next insisted by the counsel for the plaintiff that the ownership of the car by the father and that it was being driven by his son at the time of the injury with the former's consent raises a presumption that the latter was acting within the scope of his authority, and therefore the burden of proof rests upon the father to show the contrary. The vice of this insistence consists in assuming that the ownership of the car by the father and his consent of its use by the son constituted the latter his agent and servant, and therefore at the time of the injury the car of R. S. Hogan was being driven by his servant, J. E. Hogan. That is *non sequitur*. That sequence would no more follow in this case than it would in a case where if a member of this court should lend his car to a friend to drive to Fulton and while en route he should negligently run over and injure a third person. In both cases the agency would have to be first established, and then, and not until then, would the presumption arise that the son or friend was acting within the scope of his authority, and thereby shift the burden of proof upon the father.''

In the case of *Arkin* v. *Page*, 287 Ill. 420, 5 A. L. R. 216, 123 N. E. 30, the supreme court of Illinois well said: ''It seems rather a fantastic notion that a son in using the family automobile to take a ride by himself for pure pleasure is the agent of his father in furnishing amusement for himself, is

really carrying on his father's business, and that his father, as principal, should be liable for the result of the son's negligent manner of furnishing the entertainment to himself. * * * The proposition announced is that a father, by the furnishing of the means of amusement to his family, has made their amusement his business, so that each member of the family, in using for his own personal enjoyment, upon his own initiative, any of the means so furnished, though engaged exclusively in the pursuit of his own peculiar ends, without the direction, control, advice, consent, or knowledge of any other persons, is still engaged, as agent, in carrying on the business of another. If the son is his father's agent to amuse himself with an automobile, he must also be a like agent for his own amusement with bicycles, horses, and buggies, guns, golf clubs, baseballs and bats, rowboats, and motor and sail boats, if these should happen to be provided, and if, in carrying on his father's business by the use of any of these articles, as his father's agent, to amuse his father's son, he should negligently injure anyone, his father would be liable as principal. Such a refinement of reasoning has not been recognized until since the advent of the automobile, or in the case of any other instrumentality.''

In *McFarlane* v. *Winters*, 47 Utah, 598, L. R. A. 1916D, 618, 155 Pac. 437, the supreme court of Utah, in speaking of the rule announced by the Missouri court of appeals, said: ''Such a doctrine, in the ordinary affairs of life, would be monstrous, to say the least. But, if it were assumed that a distinction should be made between automobiles and other vehicles and instrumentalities, it should be made by the legislature, the law-making power, and not by the courts, who merely declare the law as they find it. We, however, can conceive neither reason nor logic in attempting to make such a distinction.''

The doctrine of *respondeat superior* applies only when the [2] relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged as a result

[63 Mont. 488.]

of the wrong. (*Doran* v. *Thomsen*, 76 N. J. L. 754, 131 Am. St. Rep. 677, 19 L. R. A. 335, 71 Atl. 296.)

The case last cited appears to be the leading and earliest case to give recognition to the basic principle involved, holding that the father who owns the automobile is not liable merely because of the relationship, and that, in order to hold the father responsible, the proof must be sufficient to show that the relation of servant or agent of the master existed at the time.

We are of opinion, and express the rule in this state, that [3] the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person for injuries sustained by its operation by the owner's minor son, while operating the same on a public street or highway in furtherance of the son's own business or pleasure. The fact that the son had the father's special or general permission to use the car is wholly immaterial.

Although there are numerous and respectable decisions holding to the contrary, we think the better rule is that herein expressed, supported by many well-reasoned decisions. (*Arkin* v. *Page, supra; Watkins* v. *Clark, supra; Hays* v. *Hogan,* 273 Mo. 1, Ann. Cas. 1918E, 1127, L. R. A. 1918C, 715, 200 S. W. 286; *Bolman* v. *Bullena* (Mo.), 200 S. W. 1068; *Doran* v. *Thomsen, supra; Heissenbuttel* v. *Meagher,* 162 App. Div. 754, 147 N. Y. Supp. 1087, affirmed in 221 N. Y. 511, 116 N. E. 1050; *Maher* v. *Benedict, supra; Van Blaricom* v. *Dodgson, supra; Blair* v. *Broadwater,* 121 Va. 311, L. R. A. 1918A, 1011, 93 S. E. 632; *McFarlane* v. *Winters, supra.*)

Objection to the contrary rule lies in the fact that the fundamental principles of agency have been wholly disregarded. The newness of the invention, lack of appreciation of the fact that an automobile is not inherently dangerous, and that it has come to us to supplant other means of road transportation, led many courts into error. The decision in the case of *Lewis* v. *Steele, supra,* is modified so far as in conflict

with the views herein expressed. The motions for directed verdicts should have been granted.

The judgment and order in the first case are affirmed, and in the second the judgment and order are reversed, and the cause is remanded, with directions to enter judgment in favor of the defendant.

ASSOCIATE JUSTICES COOPER and HOLLOWAY and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.

Rehearing denied July 10, 1922.